# 24-2033-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

PHILIP G. POTTER,

*Plaintiff-Appellant,*

— v. —

INCORPORATED VILLAGE OF OCEAN BEACH, VILLAGE BUILDING
DEPARTMENT, VILLAGE BOARD OF TRUSTEES, MAYOR OF THE
VILLAGE OF OCEAN BEACH, VILLAGE BOARD OF ZONING APPEALS,
GERARD S. DRISCOLL, Village Building Inspector, in his official and
individual capacities, THEODORE MINSKI, Village Building Inspector, in his
official and individual capacities, NICHOLAS WEISS, Village Building
Inspector, in his official and individual capacities, LOUIS SANTORA, Village
Building Inspector, in his official and individual capacities, ROBERT FUCHS,
Village Prosecutor, in his official and individual capacities, KENNETH GRAY,
Village Hearing Officer, in his official and individual capacities,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

MICHAEL STANTON
KOSAKOFF & CATALDO LLP
*Attorneys for Plaintiff-Appellant*
175 Pinelawn Road, Suite 100
Melville, New York 11747
(631) 650-1200

CP COUNSEL PRESS    (800) 4-APPEAL • (332861)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... i

PRELIMINARY STATEMENT ............................................................ 1

JURISDICTIONAL STATEMENT ......................................................... 3

STATEMENT OF THE ISSUES PRESENTED ............................................... 4

STATEMENT OF THE CASE ............................................................. 4

    A. Nature of the Case ......................................................... 4

    B. Procedural History and Disposition Below ................................... 5

FACTUAL BACKGROUND ............................................................... 7

    A. The Village's Issuance of the Certification of Occupancy and Its Initial Attempt to Revoke It ...................................................... 7

    B. The Village's Recognition that its Attempted Revocation Was Improper .. 8

    C. The Multiple Court Cases Holding that the Village Had Not Revoked the Certification of Occupancy ................................................ 13

    D. The Village's Refusal to Either Officially Reinstate the C/O Or Convene a Public Hearing Necessitated the Filing of the Initial Complaint .............. 16

    E. The Village's 2024 Final Determination to Revoke the Certificate of Occupancy Notwithstanding its Refusal to Convene a Public Hearing, the Absence of Due Process, and the Absence of Authority under the Village Code .......................................................................... 19

SUMMARY OF THE ARGUMENT ......................................................... 20

ARGUMENT .......................................................................... 21

    Appellate Standard of Review .............................................. 21

    I - The Accrual Date of Appellant's Claims Is 2024, Not 2011 ................ 21

    A. The Village Building Inspector Lacked the Authority to Unilaterally Revoke the Certificate of Occupancy ....................................... 23

    B. The Village's Actions Are Incompatible with the District Court's Conclusion that the Village Revoked the Certificate of Occupancy in 2011 .. 23

    C. Village Justice Court's 2014 Holding that Appellant's Certificate of Occupancy Was Valid and of Full Effect in March 2012 Constitutes *Res*

*Judicata*, and Further Undermines the District Court's Erroneous Conclusion 24

    D. State Supreme Court Held in 2021 and 2024 That the Village Had Yet to Take Action to Revoke the Certificate of Occupancy ...................................26

II - The Village's 2024 Revocation of Appellant's Certificate of Occupancy Violated Procedural and Substantive Due Process ................................................27

III - If the Revocation Occurred in 2011, The Village's Conduct – Including its Express Representations that it Had Not Revoked the C/O – Necessitate Application of the Continuing Violation Doctrine ................................................29

    Or Equitable Tolling ...............................................................................................29

CONCLUSION ........................................................................................................32

# TABLE OF AUTHORITIES

## Cases

*Ateres Bais Yaakov Academy of Rockland v. Town of Clarkstown*, 88 F.4th 344 (2d Cir. 2023) ................................................................................27

*Bireline v. Seagondollar*, 567 F.2d 260 (4th Cir. 1977) .........................................22

*D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 563 N.Y.S.2d 24 (N.Y. 1990) ................................................................................25

*DiBlasio v. Novello*, 344 F.3d 292 (2d Cir. 2003) ...................................................28

*Elias v. Rolling Stone*, 872 F.3d 97 (2d Cir. 2017) .................................................21

*Ferran v. Town of Nassau*, 471 F.3d 363 (2d Cir. 2006) ........................................29

*Harvey v. Melville*, 2020 WL 5123410 (S.D.N.Y. Aug. 31, 2020) ........................30

*Natale v. Town of Ridgefield*, 170 F.3d 258 (2d Cir. 1999) ...................................28

*Pakdel v. City and County of San Francisco, California*, 594 U.S. 474 (2021) .....27

*Remigio v. Kelly*, 2005 WL 1950138 (S.D.N.Y. Aug. 12, 2005) ...........................31

*Sharp v. Incorporated Village of Farmingdale*, 2017 WL 9485681 (E.D.N.Y. Aug. 21, 2017) ................................................................................29

*Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014) ....................................28

*Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980) ..................................22

*Tardd v. Brookhaven Nat. Laboratory*, 407 F.Supp.2d 404, 416 (E.D.N.Y. 2006) 31


## Statutes

Code of the Village of Ocean Beach § 64-4 ............................................................23

## PRELIMINARY STATEMENT

This matter pertains to the Village of Ocean Beach's revocation of Appellant Philip G. Potter's Certificate of Occupancy for his seasonal Fire Island residence. The initial Complaint in this matter was dismissed primarily on ripeness grounds, in that Local and State Court orders dating from 2014 and 2021 hold, unequivocally, that the Village had yet to make a final determination to revoke the C/O. Appellant then filed an Amended Complaint pleading and demonstrating that the Village had made a final determination, but the District Court granted dismissal by holding that the Village's final determination was made in 2011, thus placing this matter outside the Statute of Limitations.

It is respectfully submitted that the District Court's conclusion was clearly erroneous. The Village made a final determination, in direct violation of multiple State Court orders, and that final determination was made in 2024. The Village's actions – which the U.S. District Court for the Eastern District of New York (Hon. Gary R. Brown) acknowledged in its July 9, 2024 Memorandum of Decision and Order were "truly difficult to believe" – demonstrate significant Procedural and Substantive Due Process violations and an ongoing deprivation of Appellant's U.S. Constitutional rights.

The error at the heart of the District Court's reasoning is overwhelmingly demonstrated through the background of this matter, but perhaps no better than this:

1

on June 23, 2014, the Village convened a Due Process Hearing for the purpose of revoking Appellant's C/O. The hearing officer explained he was there to "make a report and recommendation to the mayor and the Board of Trustees. My recommendation is just that; it's just a recommendation. It is not the final action by the municipality." A-68.[1] About two months later, on August 14, 2014, the hearing officer issued a Report and Recommendation to the Village Board of Trustees, advocating for revocation of Appellant's Certificate of Occupancy. A-150 to 153. The Village Board took up that recommendation at an October 17, 2015 public hearing, when it declined to revoke Appellant's Certificate of Occupancy and tabled the proposed resolution indefinitely. A-161.

By that time, under the District Court's reasoning, this matter was already time-barred. And yet there is significantly more. Following the Village Board's refusal to revoke the C/O, Appellant commenced State Court declaratory judgment actions and, more recently, an Article 78 proceeding to compel the reinstatement of his C/O. The relief Appellant sought in those proceedings was denied because State Court held that the Village had yet to make a final determination.

These submissions were before the District Court, which chose to ignore the Village's conduct, its representations, and the holdings of multiple Courts, instead placing exclusive weight on a single piece of correspondence issued by the Village's

---

[1] References to the Appendix are designated "A-___."

former Building Inspector, dated July 15, 2011 (which Appellant alleges he did not even receive). The District Court accepted the Village's current Building Inspector's interpretation that that letter – and none of the Village's other conduct or representations – constituted its final determination, and that Appellant should have known as much.

That decision constituted clear error. The District Court's July 9, 2024 Memorandum of Decision and Order, and the judgment of dismissal entered thereon, therefore should be reversed and Appellant's Amended Complaint reinstated.

## JURISDICTIONAL STATEMENT

Subject-matter jurisdiction existed in the District Court under 28 U.S.C. § 1331 and 1367, as well as 42 U.S.C. § 1983. Appellant timely filed a timely Notice of Appeal on July 29, 2024 from the Memorandum and Decision of Order of the District Court entered July 9, 2024 and from the Judgment entered on July 10, 2014. This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as this Appeal arises from a final order and judgment.

/               /               /

3

## STATEMENT OF THE ISSUES PRESENTED

1.  Did the District Court err in concluding that the Village revoked Appellant's Certificate of Occupancy in 2011?

2.  Did the District Court err in declining to evaluate whether the Village's purported revocation of Appellant's Certificate of Occupancy in 2011 complied with Village Code or U.S. Constitutional Due Process?

3.  Alternatively, did the District Court err in declining to evaluate whether the Village's actions and representations gave rise to a tolling of the Statute of Limitations under the continuing violation doctrine or under equitable tolling?

## STATEMENT OF THE CASE

### A.  Nature of the Case

Plaintiff-Appellant Philip G. Potter commenced this action seeking monetary damages under 42 U.S.C. § 1983 arising from U.S. Constitutional violations committed by the Village, by and through its officers and employees, pertaining to the revocation of Appellant's Certificate of Occupancy, without any corresponding authority in the Village Code, without pre-deprivation Due Process, and in contravention of multiple orders of Courts of competent jurisdiction, including Village Justice Court and New York State Supreme Court.

4

**B.     Procedural History and Disposition Below**

Appellant commenced the underlying action by Verified Complaint dated August 22, 2023. Appellant's initial Complaint details a decadelong process whereby the Village created legal limbo by seemingly revoking his Certificate of Occupancy notwithstanding, among other things, its express representations to the Appellant that it had not yet done so; the disposition of criminal proceedings in Village Justice Court holding that the Village had not done so; a duly-convened public hearing where the Village Board of Trustees considered, and rejected, the proposed revocation of Appellant's Certificate of Occupancy; followed by an order of State Supreme Court specifically holding that the Village had not finally determined to revoke the Certificate of Occupancy.

On September 28, 2023 the Village moved for a pre-motion conference seeking leave to move to dismiss, and the District Court convened a telephone pre-motion conference on January 3, 2024, during which it deemed the Village's motion made and dismissed Appellant's Verified Complaint, on both ripeness and Statute of Limitations grounds, while granting Appellant leave to re-plead.

Appellant timely filed an Amended Complaint on March 1, 2024, and simultaneously commenced a State Court Article 78 proceeding seeking, among other things, the mandatory reinstatement of his Certificate of Occupancy in light of multiple Court orders stating that the Village had not yet revoked it. Appellant's

Amended Complaint details that he had conducted a Certificate of Occupancy search for his premises following the dismissal of his initial Complaint, which revealed conclusively – for the first time – that the Village then deemed July 15, 2011 as the revocation date.

It therefore argued not only that this matter was time-barred, but that the 2024 State Court Article 78 proceeding was time-barred as well. At the pre-motion conference convened on April 8, 2024, the District Court ordered that the motion be briefed. The fully-brief motion was filed to the District Court on June 12, 2024 and, by Memorandum of Decision and Order dated July 9, 2024 (the "Order Appealed From"), the District Court granted the Village's motion.

The Order Appealed From describes this matter as "Sisyphean," not only in terms of the painstaking lengths Appellant took to describe the Village's misdeeds, but also in terms its age. Concluding that the Village made a final determination to revoke Appellant's Certificate of Occupancy in 2011 and not in 2024 as Appellant urged, the District Court dismissed on Statute of Limitations grounds and declined to apply the continuing violation doctrine to toll the Statute of Limitations.

Judgment was entered in the District Court on July 10, 2024, granting the Village's motion and dismissing the case. This appeal ensued.

6

## FACTUAL BACKGROUND

**A.    The Village's Issuance of the Certification of Occupancy and Its Initial Attempt to Revoke It**

This matter begins with the Village's issuance of a Building Permit for the construction of a new dwelling at Appellant's premises, located at 205-207 Cottage Walk, Ocean Beach, New York. Compl.[2] ¶¶ 44-46. Following consistent on-site involvement from the Village Building Inspector, the Village duly issued a Certificate of Occupancy on October 10, 2010, applied retroactively to July 2, 2010. Compl., *Id.* ¶¶ 47-54, Ex. 3[A-51]. There were no material alterations or changes to the property following the issuance of the Certificate of Occupancy. *Id.* ¶ 57.

For reasons that remain unclear, by correspondence dated July 15, 2011, the same Building Inspector who issued the Certificate of Occupancy purported to revoke it, falsely claiming that Appellant had failed to file a final survey. *Id.* ¶¶ 58-60, Ex. 4 [A-52]. Appellant disputes that this letter was ever sent to him, as he only discovered its existence through a Freedom of Information Law request, and there is no "receipt" of the correspondence having been sent by certified mail in the Village's files. *Id.* ¶ 61.

Freedom of Information Law requests also revealed that someone acting on the Village's behalf materially altered the C/O with a handwritten "X" and writing

---

[2] References to "Compl." correspond to the initial Complaint filed in this matter, dated August 22, 2023. A-10 to A-48.

"VOID as of July 15, 2011" on the face of the C/O. *Id.* ¶¶ 62-63, Ex. 4 [A-53]. The materially altered C/O apparently is no longer in the Village's files as it was not disclosed in subsequent Freedom of Information Law requests. *Id.* ¶ 64.

A successor Village Building Inspector went on to issue further correspondence, dated August 23, 2011, claiming the Village had "revoked" the Certificate of Occupancy and purporting to identify certain "violations" at Appellant's premises, even though the "violations" are structures that are clearly identified and listed on the very face of the Certificate of Occupancy. *Id.* ¶¶ 55-56, 65-66, Ex. 6 [A-54].

Upon receiving the August 23, 2011 letter, Appellant contacted the Village, assuming there was simply a misunderstanding because no provision of the Village Code authorizes (or authorized in 2011) the Building Inspector to unilaterally revoke a duly-issued Certificate of Occupancy. *Id.* ¶ 68, 70. When the parties could not come to a resolution, the Village "doubled down" and issued criminal informations in early 2012, for unlawful occupancy, predicated upon the absence of a permanent Certificate of Occupancy for the premises. *Id.* ¶¶ 70-76 [A-55].

## B. The Village's Recognition that its Attempted Revocation Was Improper

The criminal informations were returnable in Village Justice Court on no fewer than seventeen occasions, ultimately resulting in Appellant's former counsel filing a dismissal motion in relation to each charge. *Id.* ¶ 77. But while those charges

8

were in process, the Village recognized that its former Building Inspector lacked authority to unilaterally revoke Appellant's Certificate of Occupancy without affording pre-deprivation Due Process.

By letter dated June 4, 2014, the Village, acting through its Village Attorney, notified Appellant that the "proposed revocation" of his Certificate of Occupancy was being referred to a Due Process hearing. *Id.* ¶ 79, Ex. 8 [A-56] (emphasis added). The notice letter states that the Village had not yet revoked the Certificate of Occupancy, and that the pre-deprivation Due Process hearing was being convened for the purpose of doing so:

> Please be advised that the undersigned has been appointed by the Village of Ocean Beach to conduct a Due Process Hearing with respect to the proposed revocation of a Certificate of Occupancy (CO 09-132), dated July 2, 2010, previously issued to you. A-56 (emphasis added).

The correspondence lists in its subject heading: "Proposed Revocation of C/O". *Id.* It is therefore significant because it is the Village's acknowledgment and recognition, as of June 4, 2014, that it had not yet revoked Appellant's Certificate of Occupancy. A-56.

Following adjournment and rescheduling, the Village convened the pre-deprivation Due Process hearing on June 23, 2014. *Id.* ¶ 80. While Appellant disputes the legitimacy of the hearing (¶¶ 80-82), its transcript again confirms the obvious: the Village convened the June 23, 2014 hearing for the purpose of the

<u>proposed</u> revocation of the Certificate of Occupancy, which of course means that the

Village had not revoked the C/O in 2011:

> [Appellant counsel Mr. Gajdos]: Additionally, my question at this point would be under what authority under the Village Code has the Mayor appointed you to conduct this hearing? Again, I see no provision under the Village Code to conduct a hearing to revoke a certificate of occupancy.

> HEARING OFFICER: We did discuss this prior to the hearing. There is no procedure outlined in the Village Code with respect to the revocation of a certificate of occupancy.

> However, I do believe based on the case law that a homeowner would – could have certain property interests associated with the CO that had been issued in his name. And under existing case law, I believe a due process hearing would be appropriate. Obviously, I don't think a municipality can simply just take something away from somebody without giving then a due process hearing. So although it's not articulated in the Village Code and based on public case law, a due process hearing would be appropriate.

> And my appointment, for lack of a better word, is to make a report and recommendation to the mayor and the Board of Trustees. <u>My recommendation is just that</u>; it's <u>just a recommendation. It is not the final action by the municipality</u>. So what I would be doing at the end of the conclusion of this hearing is reviewing the testimony, if any ;the documentation and then make a recommendation to the mayor and the Board of Trustees. And obviously, you'd be served with a copy of what that recommendation is, from this Hearing Officer. You would be entitled to file objections to those findings and recommendations to the mayor and the Board of Trustees before they take their final action. And then their final action, whatever recourse would flow from that, if any, would be necessary.

> MR. GAJDOS: Mr. Gray, I agree with your comments to the extent that a due process hearing is required. I think that, more than the case, is that stance for that.

My objection, again, is that I don't believe there is any authority for the Village, in this case, to hold such a hearing to revoke a CO, and I'll leave it at that. Let the record reflect my objection, to the tenets of the proceeding. Fair enough.

A-67 to A-69.

Like the hearing notice before it, the content of the Due Process hearing is significant to the outcome of this appeal, in two important ways: (1) the Village again acknowledged that it had not yet made a final determination to revoke the C/O; and (2) the Village acknowledged and even represented to the Appellant that pre-deprivation Due Process would have to be followed if the Village attempted to follow through on its proposed revocation of the C/O. *Id.*

The Village Attorney went on to issue a Report and Recommendation dated August 14, 2014. *Id.*, Ex. 11 [A-150 to 153]. The R&R made clear that the purpose of the pre-deprivation Due Process hearing was the "proposed revocation of the above referenced Certificate of Occupancy." A-150. Further confirming that the Village had not yet revoked the C/O, the R&R ultimately concludes that it was submitted "to revoke the Certificate of Occupancy." A-150.

Continuing the trend of repeated confirmations that the Village had not made a final determination to revoke Appellant's C/O, the R&R was presented to the Village Board as proposed Resolution No. 2015-140 at a public hearing convened on October 17, 2015. A-159, A-161.

11

The proposed resolution reads:

WHEREAS, it had come to the attention of the Village that a Certificate of Occupancy <u>may</u> <u>have</u> <u>been</u> <u>issued</u> <u>in</u> <u>error</u> to Philip and Tara Potter for the property located at 205-207 Cottage Walk, Ocean Beach, NY; and

WHEREAS, Kenneth A. Gray had been appointed to act as a Hearing Officer to conduct a Hearing related to the <u>proposed</u> <u>revocation</u> of said Certificate of Occupancy; and

WHEREAS, Kenneth A. Gray has issued a Report & Recommendation on the matter, dated August 14, 2014, a copy of which is on file with the Village Clerk's Office, which funds and concludes that the Certificate of Occupancy, in question, was issued in error and <u>recommends</u> that it be revoked; and

WHEREAS, this Board has had an opportunity to review the Hearing transcript, all related exhibits and the Report & Recommendation issued,

Now, therefore, it is hereby

RESOLVED that the Village Board adopts the Report and Recommendation in whole; and

It is further RESOLVED that the Village Board of Trustees hereby revokes the Certificate of Occupancy, in question, and deems it to be null and void.

A-161 (emphasis added).

But the Village Board did not approve the proposed resolution adopting the R&R.

*Id.* Instead, Village Trustee Christopher F. Norris moved to table it, his motion was

seconded by Village Trustee Jason Bendicksen, and the ensuing vote to table the

proposed resolution passed by a 3-2 margin, with the Mayor and Deputy Mayor voting against, and Trustees Bendicksen, Norris, and Power voting in favor. *Id.*

The Village Board never took any action following the vote to table the proposed resolution. Compl. ¶ 90.

### C.    The Multiple Court Cases Holding that the Village Had Not Revoked the Certification of Occupancy

The Village's criminal prosecutions proceeded alongside its attempt to comply with pre-deprivation Due Process. *Id.* ¶ 86. The criminal process was lengthy, resulting in numerous appearances in Village Justice Court, culminating in a November 1, 2014 appearance. *Id.*, Ex. 11 [A-154 to A-158]. For reference, this appearance was made approximately three months after the Village Attorney issued his R&R [A-150 to A-153], yet more than three years after the former Building Inspector's July 15, 2011 correspondence [A-52].[3]

The transcript of the November 1, 2014 appearance is remarkable given the events that later transpired, and made all the more so by the Village's current position (which the District Court accepted), that its Building Inspector's 2011 letter was the proper revocation instrument. In 2014, contrasted with its current posture, the Village Prosecutor was clearly troubled by the Village's actions, and recognized that

---

[3] Which is to again emphasize, under the Village and the District Court's reasoning, this matter was already time-barred by the time the Village Attorney *proposed* revoking Appellant's C/O, which also would have been fourteen months *before* the Village Board of Trustees took up the proposed resolution to revoke the C/O but declined to adopt it.

he could not, "in all good faith," oppose Mr. Potter's dismissal motion for the simple

reason that the "Village of Ocean Breach did issue a Certificate of Occupancy." A-

155. That concession led the presiding judge to inquire as follows:

> As I understand this, Mr. Potter, you were issued a C of O by the Village Building Inspector, is that correct?

> THE DEFENDANT: With the specific modifications listed on the C.O.

> THE COURT: Okay. And were those modifications adhered to?

> THE DEFENDANT: Everything I'm being ticketed for has been permitted on the C.O. The Village and/or the Trustees is in the process of reviewing my C.O. and we're in negotiations on how to potentially address the matter. They want to revoke the C.O. and I guess it's in their power to do that; at which point – well, I think it's a Civil matter at this point.

> A-157 to A-158.

That colloquy led to the on-the-record disposition of the criminal prosecutions:

> THE COURT: For the record, this matter has been on umpteen times, and I've conferenced the matter umpteen times, and Mr. Potter has been here umpteen times. I've conferenced this matter with [Village Prosecutor] Mr. Fuchs and Mr. Gajdos; and Mr. Gajdos made some very compelling arguments which I've agreed with.

> At the time you were issued the summons, you had a C of O; therefore, I don't know how the Village could prove criminal intent. They couldn't and we've had that discussion.

> As a result, I believe that the Village could bring on a preliminary action to bring on a proceeding and grant a hearing as to whether or not that C of O was wrongfully issued. That is a whole separate issue and that would be in Article 78 land, and that has nothing to do with us.

14

As such, based on the motion by Mr. Gajdos and the People's response today, I am dismissing this case.

A-157 to A-158.

Therefore, while the District Court's determination turned substantially on its conclusion that Appellant has been aware since 2011 that the Village had already revoked his Certificate of Occupancy, the November 1, 2014 disposition of the Village's criminal prosecutions contradicts that conclusion, in that Mr. Potter expressly noted (and Village Justice Court agreed) that any attempt by the Village to revoke the C/O in the future would have to be done through the civil judicial process. *Id.*

But even following the disposition of the criminal proceedings and after the Village Board's rejection of the Village Attorney's R&R, it was not fully clear whether the Village had relented and officially reinstated the Certificate of Occupancy. Compl. ¶ 91. A Certificate of Occupancy search Appellant commissioned prior to the filing of his initial Complaint, for example, was inconclusive. A-170. It identified the issuance of the Permanent Certificate of Occupancy, but also included the Village Building Inspector's July 15, 2011 letter, along with only the *Temporary* Certificate of Occupancy, which expired in May 2011. A-170 to A-172.

The absence of clarity with respect to whether the Certificate of Occupancy was valid and of full effect partially explained the Village's rejection of rental

permits Appellant applied for in 2016 (A-173), 2017 (A-174), and 2018 (A-175), which seemingly appeared premised on the absence of a Certificate of Occupancy. Appellant therefore commenced State Court declaratory judgment actions, seeking a judicial declaration that his Certificate of Occupancy was valid and of full effect. Compl. ¶ 93-99. The first such action was dismissed due to the failure to serve a pre-suit Notice of Claim under New York General Municipal Law. A-176 to A-178. The second action, however, resulted in a Short Form Order dated March 2, 2021, which denied Appellant's application as premature, "the Village Board having not made a decision as to the revocation of the [Appellant's] CO at this time." A-181.

Notably, State Court again affirmed that Appellant was entitled to pre-deprivation Due Process, holding that he was "entitled to a hearing with respect to the decision as to whether or not to revoke the CO," and noting that the Village Attorney's R&R specifically indicated that it "was not a final determination by the Village." *Id.* State Court therefore remitted the matter "for a public hearing before the Village Board, where the petitioners have a right to be present, and for a determination of the Village Board on the revocation of the CO at issue." *Id.*

**D.    The Village's Refusal to Either Officially Reinstate the C/O Or Convene a Public Hearing Necessitated the Filing of the Initial Complaint**

Appellant commenced the underlying matter on August 29, 2023, approximately two-and-a-half years after State Supreme Court's March 2, 2021

Short Form Order directing the Village to convene a public hearing, because the Village had not done so and it also had not formally reinstated Appellant's Certificate of Occupancy. The Complaint specifically pleads that the Village had taken "no formal action" to revoke the C/O. *Id.* ¶ 14. Yet it refused to reinstate it. *Id.* ¶ 16. The initial Complaint notes the Village's "decadelong inertia," which "leaves the Plaintiff in legal limbo knowing he is legally entitled to the *nunc pro tunc* reinstatement of the C/O despite the Village's dogged refusal to abide judicial determinations against it." *Id.* ¶ 21.

Appellant therefore pleaded causes of action for (I) § 1983 violations arising from the Village's failure to provide Procedural Due Process (*id.* ¶¶ 106-116); (II) § 1983 violations due to Equal Protection "Class of One" violations (¶¶ 117-125); (III) § 1983 violations due to the Substantive Due Process violations (¶¶ 126-130); (IV) malicious prosecution under New York State law (¶¶ 131-140); (V) abuse of process under New York State law (¶¶ 141-147); (VI) *Monell* liability under § 1983 (¶¶ 148-154); (VII) Fifth Amendment regulatory taking (¶¶ 155-159); (VIII) declaratory relief holding that the C/O is valid and of full effect (¶¶ 160-163); (IX) civil conspiracy under § 1985 (¶¶ 164-166); and demanding attorneys' fees and costs (¶¶ 167-168).

The Village filed a pre-motion letter seeking leave to move to dismiss. A-190 to A-191. It fails to confirm whether it had revoked Appellant's C/O, stating only

that "Plaintiff's chief complaint relates to the <u>alleged</u> revocation of a Certificate of Occupancy, which <u>purportedly</u> occurred in 2011." A-190 (emphasis added). Otherwise, it argues in favor of dismissal on both Statute of Limitations grounds and for failure to state a cause of action. *Id.*

As is relevant to this appeal, Appellant responded by noting he had no reason to believe the Village revoked his Certificate of Occupancy until March 2023 at the earliest, when he received the results of the pre-suit Certificate of Occupancy search. A-192.

At the pre-motion conference, Appellant's counsel explained that the initial Complaint pleaded that the Village, "at some point, and we don't know when that was, the village or someone acting on its behalf" made the decision to revoke the C/O even though State Supreme Court "directed the village to convene a public hearing if it intended to follow through with the revocation of the C of O."A-197. Appellant made clear that "this is an ongoing and continuing violation. It's unclear when the village actually took the action to revoke the C of O." A-197 to A-198.

Given State Supreme Court's directive that the Village convene a public hearing, the District Court expressed misgivings about whether Appellant had exhausted his administrative remedies. A-199 to A-200. After colloquy where Appellant's counsel attempted to explain that the Village seemingly revoked the C/O without notice (A-203 ["So at some point, and I'm not sure when in this time frame

18

any of this occurred, and I think that's important for statute of limitations, but I'm not sure when the village actually followed through with the revocation of the C of O . . . ."]) the District Court ruled that the Complaint failed to adequately allege "if there has been exhaustion or not . . . [s]o this is plainly clearly explicitly a dismissal without prejudice." A-208.

### E. The Village's 2024 Final Determination to Revoke the Certificate of Occupancy Notwithstanding its Refusal to Convene a Public Hearing, the Absence of Due Process, and the Absence of Authority under the Village Code

Following the dismissal of his initial Complaint, Appellant filed the Amended Complaint, which notes the initial dismissal "on the grounds that the Plaintiff was obligated to secure a final determination from the Village before this action was sufficiently ripe for presentation before this Court." Am. Compl. ¶ 10.[4] Appellant pleaded and included as an exhibit to his Amended Complaint a January 2024 Certificate of Occupancy search. *Id.* ¶¶ 84-93, Ex. 16 [A-373 to A-383]. In it, the current Village Building Inspector stated:

> Though it appears there were several [temporary certificates of occupancy] and then a [permanent certificate of occupancy] issued from the multiple page document previously attached; this is a moot issue since the attached CO revocation letter dated July 15, 2011, revokes any CO that may have been issued.
>
> *Id.* ¶ 89, A-376.

---

[4] References to "Am. Compl." correspond to the Amended Complaint filed in this matter, dated March 1, 2024. A-213 to A-240.

Appellant pleaded that he attempted to contact the Village to explain that such a determination was arbitrary and capricious, in excess of any authority by the Village Building Inspector to unilaterally revoke the C/O without notice or Due Process. *Id.* ¶ 90. The Village responded that it considers the Certificate of Occupancy duly and validly revoked and that Appellant must undertake significant efforts to modify the structure, remove the existing deck, and substantially change the layout of the existing premises, at considerable cost. *Id.* ¶¶ 91-93. Appellant pleaded that the Village's current position (that the C/O was properly revoked) effectively precludes him from occupying his seasonal residence and, given the construction constraints within the Village of Ocean Beach, may preclude him from occupying or using the premises beyond the 2024 summer season. *Id.*

The Amended Complaint pleads substantially similar facts to Appellant's initial Complaint, but revises the causes of action as follows: (I) § 1983 violations for failure to provide Procedural Due Process (¶¶ 98-108); (II) § 1983 violations for denial of Substantive Due Process (¶¶ 109-113); (III) *Monell* liability (¶¶ 114-120); and (IV) civil conspiracy under § 1985 (¶¶ 121-123).

## <u>SUMMARY OF THE ARGUMENT</u>

The Village's dismissal motion was improperly granted. Notwithstanding multiple legal and factual impediments, the District Court held that the Village's revocation of the Certificate of Occupancy occurred in July 2011 rather than January

2024. By applying the earlier, incorrect date, the District Court determined that the Statute of Limitations had expired on Appellant's causes of action under § 1983. The District Court then further erred by determining that the U.S. Constitutional property interest at stake did not involve the revocation of a Certificate of Occupancy at all, but rather the Village's failure to call a public meeting for the purpose of confirming whether its 2011 revocation was proper. Concluding that Appellant had failed to articulate the impingement of a protected property interest, the District Court went on to hold that the failure to hold a hearing cannot form the basis for a due process claim, and therefore did not consider at all whether the continuing violation doctrine applied to the facts of this case.

These determinations were in error.

## ARGUMENT

### APPELLATE STANDARD OF REVIEW

The standard of review of a district court's grant of a Rule 12 motion is *de novo*. *See Elias v. Rolling Stone*, 872 F.3d 97, 104 (2d Cir. 2017) (citation omitted).

### POINT I

### THE ACCRUAL DATE OF APPELLANT'S CLAIMS IS 2024, NOT 2011

This is not a typical case involving a straightforward accrual date. It does not involve, for example, the seizure of personal property, unlawful detainment, or even the denial of a land use application. In each of those circumstances, an accrual date

is – or can be – easily discerned, because there is a specific date for the seizure, the detainment, or the denial.

This matter instead involves Village officials' subjective and ever-changing interpretation of a document particularly within the Village's own control. To understand when the Village made its final determination, therefore, the Appellant necessarily had to understand the scope of the authority of those purporting to act, listen to the words and representations made to him by Village officials vested with authority and, of course, abide the determinations of Courts of competent jurisdiction.

So when Village officials made specific representations that the Village had not made a final determination to revoke Appellant's C/O, and explained that the Village must follow Due Process if it intended to do so, and then State Supreme Court thereafter held the same, the Appellant reasonably concluded that the Village had not, in fact, taken final action.

The legal standard for the accrual date of Appellant's causes of action is "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (*citing Bireline v. Seagondollar*, 567 F.2d 260, 263 [4th Cir. 1977]). Under the mostly uncontested facts of this case, there can be no other accrual date than January 2024.

### A. The Village Building Inspector Lacked the Authority to Unilaterally Revoke the Certificate of Occupancy

The first factor undermining the District Court's error was that it accepted the threshold proposition that the Village Building Inspector had any authority to unilaterally revoke the Certificate of Occupancy when he purported to do so by letter only in 2011. But no provision of the Village Code exists (or then existed) allowing the Building Inspector to do so. While the Village Building Inspector is authorized to *issue* a C/O, no provision of the Village Code authorizes them to *revoke* one. *See* Code of the Village of Ocean Beach § 64-4.

Moreover, the Complaint specifically pleads that Appellant did not receive the Building Inspector's July 15, 2011 correspondence, and only discovered its existence through a Freedom of Information Law search. Compl. ¶ 61.

The District Court seemingly overlooked (1) the absence of authority; and (2) Appellant's express allegation that he did not receive the former Building Inspector's July 15, 2011 correspondence in determining an accrual date of July 15, 2011. Its determination was therefore erroneous and cannot be sustained.

### B. The Village's Actions Are Incompatible with the District Court's Conclusion that the Village Revoked the Certificate of Occupancy in 2011

Further confirming that the revocation occurred in 2024 and not 2011, the Village made express representations to the Appellant throughout the history of this

23

matter that it had <u>not</u> revoked his C/O in 2011, and that it would comply with pre-deprivation Due Process if it intended to do so.

Those representations began in 2014 as detailed above and continued throughout the history of this matter. The Village opposed Appellant's initial State Court declaratory judgment action by arguing in October 2019, "this matter should be resolved in the merits by the Board of Trustees taking action on the recommendation of the hearing officer . . . ." A-469. In November 2020, however, the Village switched gears and claimed that the July 2011 correspondence from its former Building Inspector was the Village's final determination. A-474. When State Supreme Court rejected that position in its March 2, 2021 Short Form Order (A-181), the Village pivoted again, arguing on March 23, 2021 that "only Board action on the findings of the hearing are outstanding." A-488.

These are clear and unmistakable representations by Village officials and those acting on their behalf, repeatedly confirming to the Appellant that the Village had not taken final action, and representing that it would apply with applicable law if it intended to do so.

### C. Village Justice Court's 2014 Holding that Appellant's Certificate of Occupancy Was Valid and of Full Effect in March 2012 Constitutes *Res Judicata*, and Further Undermines the District Court's Erroneous Conclusion

Appellant's position is not only buttressed by the Village's mostly-consistent representations throughout this matter, but also by the 2014 disposition of the

criminal summonses the Village issued in March 2012, pertaining to the purported absence of a valid C/O. A-55. The issuance of those summonses was resolved at a November 1, 2014 appearance in Village Justice Court for the Incorporated Village of Ocean Beach, where Judge William D. Wexler held, "At the time you were issued the summons, you had a C of O . . . ." A-157.

Under New York law, collateral estoppel and *res judicata* preclude re-litigation of issues decided in a criminal action that are later raised in a civil proceeding where (1) the identical issue was necessarily decided in the prior proceeding and is decisive of the present action; and (2) there was a full and fair opportunity to contest that issue in the prior proceeding. *See*, *e.g.*, *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 665-666, 563 N.Y.S.2d 24, 27-28 (N.Y. 1990).

Here, each element is plainly met. The criminal summonses the Village issued each related to the purported absence of a C/O in 2012. The Village pursued those criminal violations but ultimately conceded that "the Village of Ocean Beach did issue a Certificate of Occupancy" [A-155]. Village Justice Court then went on to dismiss the criminal cases because "[a]t the time you were issued the summons [in 2012], you had a C of O." A-157.

25

The Village, therefore, plainly did not revoke or void the C/O in 2011. The District Court's conclusion that it did is barred by *res judicata* and collateral estoppel.

**D.    State Supreme Court Held in 2021 and 2024 That the Village Had Yet to Take Action to Revoke the Certificate of Occupancy**

In addition to the Village's direct representations and Justice Court's 2014 disposition, State Supreme Court has ruled – twice – that the Village did not revoke Appellant's Certificate of Occupancy in 2011. The first such disposition, by Short Form Order dated March 2, 2021, unequivocally holds that Appellant was "entitled to a hearing with respect to the decision as to whether or not to revoke the CO. The Hearing Officer remitted his Report and Recommendations but indicated that it was not a final determination by the Village. The Village has failed to make a final determination as to the revocation of the CO at issue in this action." A-372.

That determination is fully consistent with the statements and representations the Village made in its 2014 Dur Process hearing. A-67 to A-68. Appellant therefore had no reason to think, given State Supreme Court's determination and the Village's prior representations, that the revocation had occurred in 2011.

And while Appellant disagrees with the factual and legal reasoning in State Court's April 17, 2024 Short Form Order, the disposition was no less clear: "The

Court finds that a final determination on the revocation of the CO has not been made by the Village . . . ." A493.[5]

Given the Village's conduct and its representations, not to mention the outcome of Local and State judicial actions, the Appellant simply had no reason to conclude (or even suspect) the Village deemed its Building Inspector's 2011 correspondence its final determination. The District Court's conclusion to the contrary constitutes clear, reversible error on the facts and the law and therefore should be reversed.

POINT II

THE VILLAGE'S 2024 REVOCATION OF APPELLANT'S CERTIFICATE OF OCCUPANCY VIOLATED PROCEDURAL AND SUBSTANTIVE DUE PROCESS

Compounding the District Court's errors was its failure to recognize the Village's obligation to provide pre-deprivation Due Process if it intended to revoke Appellant's C/O. The Village has never identified the existence of an emergency or other circumstances justifying the failure to provide pre-deprivation Due Process, and, as a general rule, "due process requires that a [municipality] afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest." *See*

---

[5] State Court's determination that the Village had yet to make a final determination was clearly erroneous and the appeal thereof has been fully submitted to the Appellate Division: Second Department. *See Ateres Bais Yaakov Academy of Rockland v. Town of Clarkstown*, 88 F.4th 344, 351 (2d Cir. 2023) ("It is important to bear in mind that 'the finality requirement is relatively modest,' and 'nothing more than *de facto* finality is necessary.") (*citing Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 479 [2021]).

*DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citations omitted) (emphasis added).

All the more confounding, the Village specifically represented that it would provide pre-deprivation Due Process (A-67 to A-68), State Supreme Court directed it to do so (A-181), and yet the Village now refuses. A-499 to A-500 (Village argument that it was not required to provide pre-deprivation Due Process). Although the District Court's dismissal was clearly erroneous, it properly recognized that these circumstances render the Village's actions are "truly difficult to believe." A-577. Substantive Due Process violations occur where there is "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *See Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

The facts here go well beyond a basic property dispute involving the good faith discharge of municipal duties and obligations. The Village's numerous equivocations and outright deception (if, in fact, it did revoke the C/O in 2011) are reminiscent of *Sherman v. Town of Chester*, 752 F.3d 554 (2d Cir. 2014), where this Court identified a similar, decadelong pattern of delay and inertia by the defendant municipality, and concluded that "[i]t would be perverse to allow the Town to use that same delay to avoid liability." *Sherman*, 752 F.3d at 566.

Similar circumstances are present here, and the Village's outrageous conduct and numerous about-faces are, indeed, "truly difficult to believe." A-577. These are

the very essence of "conscience-shocking" decisions that go well beyond "merely 'incorrect or ill-advised'" and thus plainly satisfy the elements of a claim for Substantive Due Process violations. *See Ferran v. Town of Nassau*, 471 F.3d 363, 369-370 (2d Cir. 2006) (citation omitted).

POINT III

IF THE REVOCATION OCCURRED IN 2011, THE VILLAGE'S CONDUCT – INCLUDING ITS EXPRESS REPRESENTATIONS THAT IT HAD <u>NOT</u> REVOKED THE C/O – NECESSITATE APPLICATION OF THE CONTINUING VIOLATION DOCTRINE <u>OR EQUITABLE TOLLING</u>

Although it is respectfully submitted that the Village did not revoke the C/O in 2011 (and, in fact, could not have given the absence of any authority under the Village Code allowing its Building Inspector to do so), in the event this Court determines otherwise and upholds the District Court's conclusion, it is respectfully requested as alternative relief that this Court apply the continuing violation doctrine or equitable tolling to extend the Statute of Limitations.

In making this request Appellant is mindful that the continuing violation is "heavily disfavored" in this Circuit and applicable in only where "compelling circumstances" are present. *See Sharp v. Incorporated Village of Farmingdale*, 2017 WL 9485681, *13 (E.D.N.Y. Aug. 21, 2017). But the "compelling circumstances" where the doctrine has been applied extends to "serial actions that together comprise a unitary violation, rather than discrete and separate acts, each unlawful on their own." *See Harvey v. Melville*, 2020 WL 5123410, *4 (S.D.N.Y. Aug. 31, 2020).

29

Such circumstances are present here. For the sake of this argument we must assume that the Village's initial unlawful act occurred on July 15, 2011, when its former Building Inspector revoked Appellant's C/O without notice, without pre-deprivation Due Process, and without any corresponding authority in the Village Code, a plain violation of Appellant's U.S. Constitutional rights. The Village then serially concealed that initial unlawful act by taking steps to make it appear that it had not done so, by convening a sham pre-deprivation Due Process hearing in 2014, and even "proposing" the revocation of the C/O to the Village Board in 2015, all actions that would be legal on their face but made (apparently) in furtherance of concealing the prior, illegal act by the Village's former Building Inspector. The Village then undertook further acts to conceal its initial illegal action by making judicial representations to State Supreme Court that it had not, in fact made a final determination to revoke the C/O. A-488 (submission from the Village Attorney in March 2021 asking State Court to remit this matter for the Village "Board to make a determination based on the prior hearing.").

The Village's evolving interpretation of whether the C/O was revoked, coupled with its own actions and representations therefore have been the singular impediment rendering it difficult for Appellant to "pinpoint the exact date the violation occurred." *See Remigio v. Kelly*, 2005 WL 1950138, *8 (S.D.N.Y. Aug.

12, 2005) (citation omitted) (applying continuing violation doctrine to Due Process claims brought under § 1983).

And in the same vein, the doctrine of equitable tolling also applies in the event this Court deems the continuing violation doctrine does not. The Village made numerous representations – both in judicial and *quasi*-judicial proceedings – that it had *not* revoked the C/O in 2011. Given the Village's conduct and its express representations, the doctrine of equitable estoppel applies to toll the Statute of Limitations. Equitable estoppel can be asserted where (1) the defendant made a definite misrepresentation of fact and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment. *See*, *e.g.*, *Tardd v. Brookhaven Nat. Laboratory*, 407 F.Supp.2d 404, 416 (E.D.N.Y. 2006) (citations omitted). The doctrine exists to prevent a defendant from lulling "the plaintiff into believing that it was not necessary for him to commence litigation." *Id.*

Those circumstances are plainly present here, necessitating either the extension or tolling of the Statute of Limitations, but only if this Court deems July 2011 as the accrual date of Appellant's causes of action.

## **CONCLUSION**

Based upon the foregoing, it is respectfully submitted that the District Court's Order be reversed and Appellant's Amended Complaint reinstated, together with such other and further relief as the Court deems just and proper.

Dated: October 15, 2024
     Melville, New York

                  Respectfully submitted,

                  **KOSAKOFF & CATALDO LLP**

                  */s/ Michael Stanton*
                  By:   Michael Stanton
                  175 Pinelawn Road
                  Melville, New York 11747
                  (631) 650-1203
                  mstanton@kcllp.net

                  *Attorneys for Appellant*

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(I), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,319 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

**Page**

Judgment, dated July 10, 2024, Appealed From........  SPA-1

SPA-1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
PHILIP G. POTTER,

                    Plaintiff,

        - against -

INCORPORATED VILLAGE OF OCEAN
BEACH, et al.,

                   Defendants.
----------------------------------------------------------X

                                **JUDGMENT**
                                CV 23-6456 (GRB) (ARL)

      A Memorandum of Decision and Order of Honorable Gary R. Brown, United States

District Judge, having been filed on July 9, 2024, granting defendants' motion to dismiss, and

directing the Clerk of Court to close this case it is

      **ORDERED AND ADJUDGED** that plaintiff Philip G. Potter take nothing of defendants

Incorporated Village of Ocean Beach, Mayor of The Village of Ocean Beach, Village Board of

Trustees, Village Board of Zoning Appeals, Village Building Department, Gerard S. Driscoll,

Kenneth   Gray, Louis Santora, Nicholas Weiss, Robert Fuchs, and Theodore Minski; that

defendants' motion to dismiss is granted; and that this case is closed.

Dated: July 10, 2024
       Central Islip, New York

                             BRENNA B. MAHONEY
                             CLERK OF COURT

                BY:   /S/ JAMES J. TORITTO
                        DEPUTY CLERK